**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TREIU THUY DUONG,** | : | |
| **Petitioner** | : | **CASE NO. 3:14-CR-0073** |
| **v.** | : | **(MANNION, D.J.)** |
| **UNITED STATES OF AMERICA** | : | |
| **Respondent** | : | |

### <u>MEMORANDUM</u>

Pending before the court is petitioner Treiu Thuy Duong's ("Duong") *pro se* Motion to Vacate, Set Aside or Correct, her 70-month sentence to imprisonment imposed on July 10, 2017. (Doc. 171). Duong is currently serving her prison sentence at FCC-Coleman in Florida. Duong's motion is filed pursuant to 28 U.S.C. §2255 and is based upon ineffective assistance of counsel claims against her trial and appellate counsel. Duong claims that her counsel were ineffective for failing to challenge the quantity of alpha-pvp attributed to her, the gun enhancement she received, and the use of methcathinone as a comparable to drug to alpha-pvp to calculate the applicable guidelines range. Upon the court's review of the record in this case, Duong's motion and traverse, (Doc. 174), as well as the government's response, (Doc. 173), Duong's motion will be **DENIED** without the need for an evidentiary hearing.

1

## I.    BACKGROUND[1]

On June 15, 2015, Duong pled guilty to conspiracy to distribute and possess with intent to distribute a controlled substance, namely, analogue, alpha-pvp, in violation of 21 U.S.C. §846. (Doc. 82). The court directed that a pre-sentence report ("PSR") be prepared. The PSR found that Duong was involved in the distribution of at least 10 kilograms of alpha-pvp, and possessed a firearm in connection with the offense. The PSR used methcathinone as the "most closely related substance" to alpha-pvp in order to calculate Duong's applicable guideline range and the court concurred. Then, as stated by the Third Circuit, Duong, ___ Fed. Appx. ___, 2017 WL 1363877, *1:

> The presentence report calculated a base offense level of 32, given the amount (10 kilograms) of a-PVP involved in Duong's offense. A two-level enhancement was made for possession of the weapon found during the search of Duong's residence. And a three-level downward adjustment for acceptance of responsibility was recommended, which lowered the offense level to 31. For someone, like Duong, with no criminal history, the guidelines range for that offense level is 108 to 135 months' imprisonment.

> Neither the government nor Duong filed any objections to the PSR.

> However, Duong filed a sentencing memorandum, (Doc. 146), before

---

[1]Since the complete factual background of this case is detailed by the Third Circuit in its decision affirming Duong's judgment of sentence, United States v. Treiu Thuy Duong, ___ Fed. Appx. ___, 2017 WL 1363877 (3d Cir. 2017), and it is stated in the government's brief, (Doc. 173 at 8-10), it shall not be fully repeated herein. The court also notes that Duong does not oppose the background as stated by the government in her traverse. (Doc. 174).

her sentencing and she requested the court give her a downward variance under §3553(a) from the adjusted guideline range of 78-97 months in prison. Duong did not challenge the quantity of alpha-pvp attributed to her, the gun enhancement, or the use of methcathinone as a comparable drug to alpha-pvp to calculate the recommended guideline range.

Duong's sentencing hearing was held on February 19, 2016. (Doc. 148). At Duong's sentencing, the court gave her a downward departure and set her offense level at 28, and her guidelines range was reduced to 78 to 97 months in prison. Duong's counsel requested a downward variance from the bottom of the guidelines range of 78 to 97 months "based on [Duong's] personal history and character, her model conduct during supervised release, and her status as a single mother." Id. The court granted a variance of eight months from the recommended guidelines raage and imposed a sentence of 70 months imprisonment. (Doc. 150).

The defendant appealed her sentence to the Third Circuit Court of Appeals, which subsequently affirmed. United States v. Treiu Thuy Duong, ___ Fed. Appx. ___, 2017 WL 1363877 (3d Cir. 2017). Specifically, in her direct appeal, "Duong contends that the District Court plainly erred by considering her personal circumstances under a restrictive standard applicable to departures rather than variances. She then argues that the sentence was substantively unreasonable because of that alleged procedural flaw." Id. at *2. Duong essentially argued that the sentencing court construed

her request for a variance as a request for a departure. The Third Circuit found that "[t]he record shows that the Court understood [Duong's] request as one for a variance and that it applied the correct standard." Id. at *3. The Third Circuit then found that "[b]ecause there was no procedural error," Duong's claim that her sentence was substantively unreasonable, which was based on the alleged procedural error, also failed.

On July 10, 2017, Duong filed her instant Motion to Vacate, Set Aside, or Correct her sentence pursuant to 28 U.S.C. §2255, seeking a reduction in her sentence. (Doc. 171). She did not file a brief in support. On July 24, 2017, the government filed a brief in opposition. (Doc. 173). On August 15, 2017, Duong filed a traverse. (Doc. 174).

## II.    STANDARD

When a district court judge imposes a sentence on a defendant who believes "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, [the defendant] may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. §2255, ¶1; *see* United States v. Eakman, 378 F.3d 294, 297-98 (3d Cir. 2004).

The rule states that "[i]f it plainly appears from the motion, any attached

4

exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party." *See* [United States v. Bendolph, 409 F.3d 155, 165 n. 15 (3d Cir. 2005)](stating district courts have the power to dismiss petitions *sua sponte* during the Rule 4 stage of habeas proceedings).

A §2255 motion "is addressed to the sound discretion of the district court." United States v. Williams, 615 F.2d 585, 591 (3d Cir. 1980). "[A] motion under 28 U.S.C. §2255 is the proper procedure for a federal prisoner to raise a collateral attack on his or her federal sentence for any error that occurred at or prior to sentencing." Paulino v. U.S., 2010 WL 2545547, *2 (W.D.Pa. June 21, 2010)(citations omitted). "In order to prevail on a §2255 motion to vacate, set aside, or correct a sentence, a Petitioner must show '(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.'" U.S. v. Bates, 2008 WL 80048, *2 (M.D.Pa. Jan. 7, 2008)(quoting Mallet v. U.S., 334 F.3d 491, 496-97 (6th Cir. 2003)). "The petitioner bears the burden of proof under §2255 and must demonstrate his right to relief by a preponderance of the evidence." U.S. v. Ayers, 938 F.Supp.2d 108, 112 (D.D.C. 2013)(citation omitted). Duong's instant claims fall within the purview of §2255 since they challenge the validity of her February 19, 2016 sentence. Bates, 2008 WL 80048, *3 ("Claims of ineffective assistance of counsel may be brought in the first instance by way

of a §2255 motion regardless of whether the movant could have asserted the claim on direct appeal.")(citing Massaro v. U.S., 538 U.S. 500, 504, 123 S.Ct. 1690 (2003)).

The Sixth Amendment to the United States Constitution guarantees a criminal defendant "the assistance of counsel for his defense." U.S. Const. amend. VI. The U.S. Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984) established a two-prong test to evaluate the effectiveness of the assistance of counsel. In the first prong, the defendant must show "that counsel's performance was deficient," id., 687, and must prove this by "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. In addition, the defendant must show that "counsel's representation fell below an objective standard of reasonableness." Id., 687-88.

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy.

Id., 689.

In the second prong, a defendant must show that counsel's deficient performance "prejudiced the defense," because "counsel's errors were so

6

serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., 687. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test, cf. United States v. Valenzuela–Bernal, 458 U.S. 858, 866–867 (1982), and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." Id., 693. Rather, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., 694. Thus, to state a successful claim for ineffective assistance of counsel, petitioner must show "both that counsel's performance was deficient, and that the deficiency prejudiced the defense." Wiggins v. Smith, 539 U.S. 510, 521, 123 S.Ct. 2527 (2003). "A failure to make the required showing on either prong defeats a defendant's ineffective assistance of counsel claim." Ayers, 938 F.Supp.2d at 113 (citing Strickland, 466 U.S. at 700).

## III. DISCUSSION

In her §2255 Motion for Relief, (Doc. 171), Duong requests the court to reduce her 70-month sentence. She bases her motion on three claims of ineffective assistance of counsel. Specifically, as summarized by the government, (Doc. 173 at 2), Duong asserts the following grounds in her

motion:

> 1) trial counsel was ineffective for failing to challenge the quantity of alpha-pvp attributed to her as part of the conspiracy, i.e., Duong claims it was six kilograms and not ten, and appellate counsel was ineffective for failing to raise this issue [regarding the amount of the alpha-pvp] on direct appeal;
>
> 2) trial counsel and appellate counsel were ineffective for failing to challenge at sentencing and on direct appeal the court's use of a [proper] comparable chemical [to alpha-pvp] to calculate her guidelines range; and
>
> 3) trial counsel and appellate counsel were ineffective for failing to challenge her gun enhancement at sentencing and on direct appeal [since she claims that she did not use the gun to facilitate her crime].

The court analyzes these claims of ineffective assistance of counsel using the two-pronged approach prescribed in *Strickland*.[2]

The court will now discuss Duong's claims seriatim.

## 1. Failure of Counsel to Challenge the Quantity of Alpha-pvp

The court must first determine whether Duong has overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" Strickland, 466 U.S. at 689. No doubt, the key to

---

[2]Despite the fact that Duong did not raise her instant claims in her direct appeal, she is not procedurally barred from collaterally attacking her sentence under §2255 since ineffective assistance of counsel claims are an exception to the general rule of procedural default. Massaro v. United States, 538 U.S. 500, 504 (2003). In fact, "ineffective assistance of counsel claims are generally not considered on direct appeal." Rather, "they are more commonly brought in a collateral proceeding, such as through a post-conviction 28 U.S.C. §2255 motion to vacate." U.S.A. v. Washington, --- F.3d ----, 2017 WL 3695129, *6 (3d Cir. Aug. 28, 2017) (citation omitted).

a knowing and voluntary guilty plea is the effective assistance of competent counsel. *See* Boyd v. Waymart, 579 F.3d 330, 349 (3d Cir. 2009)(citations omitted). Duong was represented by counsel throughout her proceedings. She has now filed her §2255 motion *pro se* challenging her counsel's representation of her.

The PSR attributed at least 10 kilograms of alpha-pvp to Duong. Duong claims as follows in her motion, (Doc. 171 at 4):

> I wanted my attorney to challenge the amount of the drug stated in the presentence report, which was 10 kg of a-PVP. The government had confiscated 4 kg of that quantity at the customs border; the amount that reached me was 6 kg, not 10kg. I could not reach my attorney before sentencing to discuss this matter. When we talked just before the proceeding I told him that the amount in the PSR was incorrect and that the difference would reduce my sentence. My attorney told me that "now was not the time to bring that up," or words to that effect.

The government points out that, (Doc. 173 at 11):

> In explaining its sentence, the court noted that [during the conspiracy] the defendant was involved in distributing a "significant amount of controlled substances," and was a "large supplier" of alpha-pvp. The pre-sentence report noted that the defendant was involved in distributing 10 kilograms of alpha-pvp. (PSR ¶25). The drug distributed by the defendant in this case, the court stated, is "a very, very dangerous addictive substance that causes serious hurt to families and individuals who get addicted to it." (N.T. Sentencing Hearing, pp. 8-11).

Duong contends that her trial counsel should have objected to the finding that she was involved in distributing at least 10 kilograms of alpha-pvp and that his failure to do so rendered him ineffective and resulted in a longer

9

sentence than she should have received since she was only responsible for 6 kilograms. The government concedes that "[s]ix kilograms of alpha-pvp would result in an offense level 30, while ten kilograms of alpha-pvp resulted in an offense level of 32." (Id. at 12 n. 1).

The government counters Duong's claim by stating that just because 4 kilograms were confiscated and Duong never received the full 10 kilograms intended for her "does not absolve her of the responsibility for ordering the full 10 kilograms." (Id. at 12). Importantly, the government, (Id. at 12-13), explains as follows:

> Duong was involved in a multi-year alpha-pvp trafficking conspiracy and had customers in 32 states throughout the country (Guilty Plea Hearing, June 15, 2015, p. 78), including Todd Morgans in West Pittston, Pennsylvania. Agents seized nearly a kilogram of alpha-pvp at Morgans' residence in July 2013—the last of many shipments Morgans received from Duong. Bank statements seized from Morgans show that between December 2012 and March 2013, Morgans purchased nearly $39,000 worth of alpha-pvp from Duong. (Guilty Plea Hearing, June 15, 2015, pp. 76-77; PSR ¶ 9). A cooperating witness stated that he/she received ten packages of alpha-pvp from Duong between February 2013 and July 2013. In August and October 2013, undercover state police troopers purchased alpha-pvp via the internet from Duong. In March 2014, agents executed a search warrant at Duong's residence in Texas and seized 843 grams of alpha-pvp, firearms, coins, cash, postal money orders, digital scales, cell phones and other items. (Guilty Plea Hearing, June 15, 2015, p. 78; PSR ¶16). Financial records showed that Duong used proceeds from alpha-pvp sales to pay the mortgage on their residence in Texas, purchase a vehicle, and purchase thousands of silver coins. (Guilty Plea Hearing, June 15, 2015, pp. 78-79; PSR ¶ 18).

Based on the record, the court finds that Duong was correctly held to be responsible for at least 10 kilograms of alpha-pvp as part of her role in the drug distribution conspiracy. The evidence clearly established that Duong was involved in a conspiracy to possess and distribute at least 10 kilograms of alpha-pvp. Duong tried to purchase 10 kilograms of alpha-pvp, which undoubtedly fell within the bounds of the conspiracy. Duong essentially argues that she should have been sentenced based on the quantity of the drug she received rather than on the quantity she ordered. (Doc. 174 at 5). Simply because a portion of one shipment of the drug sent to Duong for distribution by her co-conspirator(s) did not reach her as intended does not prove that she was only responsible for 6 kilograms of alpha-pvp for her role in the conspiracy. Such a finding would completely ignore the fact that Duong was part of a much larger alpha-pvp trafficking conspiracy that lasted several years and had customers throughout United States. Indeed, the Indictment to which Duong pled guilty, charged that the conspiracy extended from "in or about December 1, 2012" "up to and including March 7, 2014." (Doc. 1). The entire amount of the 10 kilogram shipment Duong was to receive was part of her role in the conspiracy that she was to distribute and this entire quantity is properly countable for sentencing purposes. Further, the government is not required to prove that any of the members of the conspiracy were successful in achieving any or all of the objectives of the conspiracy. *See* U.S. v. Harvey, 2014 WL 657595, *1 (W.D.Pa. Feb. 20, 2014) ("It is a federal crime for two or

more persons to agree or conspire to commit any offense against the United States, even if they never actually achieve their objective."). Moreover, "[i]If a Defendant is convicted of conspiracy, he/she is liable for the [drug] quantity handled by the entire conspiracy, not just the quantity of drugs he/she handled individually." Harvey, 2014 WL 657595, *2 (citing United States v. Barndt, 2013 WL 3929041 at *3 (3d Cir. July 31, 2013).

Additionally, "[u]nder the United States Sentencing Guidelines (USSG), relevant conduct in a conspiracy is determined by reference to "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and ... all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." U.S. v. Iglesias, 3d Cir. 2008) 535 F.3d 150, 160 (citing USSG Manual §§1B1.3(a)(1)(A), 1B1.3(a)(1)(B)). Thus, "a person convicted of conspiracy to distribute controlled substances '*is accountable for all quantities of contraband* with which he was directly involved and ... all reasonably foreseeable quantities of contraband that were within the scope of the criminal activity that he jointly undertook.'" Id. (emphasis original) (citing USSG §1B1.3 cmt. n. 2); *see also* Jansen v. U.S., 369 F.3d 237, 244 (3d Cir. 2004).

As such, her counsel was not ineffective for failing to object to the drug amount attributed to her at sentencing since there was no basis in fact or law to raise such an objection. See Real v. Shannon, 600 F.3d 302, 310 (3d Cir.

2010) (Third Circuit held that trial counsel was not ineffective for failing to raise a meritless objection); Washington, --- F.3d ----, 2017 WL 3695129, *7 ("[B]oth deficiency and prejudice must be proven to have a valid [ineffective assistance of counsel] claim for relief.") (citation omitted); Strickland, 466 U.S. at 694 (to establish the prejudice prong the defendant must show that "but for counsel's unprofessional errors, the result of the proceeding would have been different"). Duong has failed to overcome the strong presumption that her trial counsel's performance was reasonable. *See* Strickland, 466 U.S. at 689. Moreover, despite the fact that Duong's base offense level would have dropped from 32 to 30 if she was found responsible for only 6 kilograms of alpha-pvp, her 70-month sentence was still below that recommended guideline range. Thus, the court finds no merit to Duong's first claim in her §2255 motion.

### 2. Use of Methcathinone as Comparable Drug for Alpha-pvp for Guidelines Calculation

Duong claims that her counsel was ineffective for failing to challenge the use of methcathinone for alpha-pvp with respect to her guideline calculation. The PSR used methcathinone as a closely related chemical substance to alpha-pvp to calculate Duong's guidelines range. Duong clarifies in her traverse, (Doc. 174 at 6), the she is claiming her "counsel was ineffective for not objecting to the fact that the government lab had said one chemical should be used to determine points, the PSR said another [chemical], and the chemical the PSR said should be used increased my points." Regardless, at

issue, is whether the chemical used by the PSR and the court, i.e., methcathinone, was proper to determine her guidelines range.

Alpha-pvp is "a controlled substance not listed in the United States Sentencing Guideline Drug Quantity Table or the Drug Equivalency Tables." United States v. Brewer, 2016 WL 3580614, *1 (D. Me. June 28, 2016). Alpha-pvp is a controlled substance analogue as defined in 21 U.S.C. §802(32). The court used methcathinone, a schedule I substance, to calculate her drug quantity and base offense level under the guidelines since it found that alpha-pvp was closely related to methcathinone. Duong essentially argues that the court should have used another substance instead of methcathinone. She claims that her counsel was ineffective for not objecting to the use of methcathinone since the government lab referred to another substance which she does not identify. As the court stated in *Brewer*, *id*., "the statute requires a comparison only to a controlled substance in schedules I or II, and [ ] as a matter of fact Alpha-PVP is more closely related to methcathinone...."

As the government points out, methcathinone is the most appropriate analogue to alpha-pvp for sentencing. (Doc. 173 at 14). The government indicates that since alpha-pvp is designated as a schedule I controlled substance and it is not referenced in the guidelines, §2D1.1 of the guidelines should be followed to determine the correct drug comparison for sentencing purposes. The government then states that "[c]ourts have repeatedly held that

14

methcathinone is the most closely related substance to alpha-pvp that is referenced in the sentencing guidelines, and is therefore properly used to calculate the quantity of alpha–pvp for sentencing guideline purposes." (Id. at 14-15) (citing United States v. Lane, 616 Fed. Appx. 328, 329 (9th Cir. 2015), cert. denied, 136 S. Ct 921 (2016); United States v. Brewer, 2016 WL 3580614, at *14 (D. Me. June 28, 2016); United States v. Emerson, 2016 WL 1047006, at *4-6 (D. Vt. Mar. 10, 2016); United States v. Arbuckle, 2016 WL 1098910, at *5 (D. Vt. Feb. 16, 2016), report and recommendation adopted, 2016 WL 1092604 (D. Vt. Mar. 21, 2016); United States v. Moreno, 2015 WL 6071680, at *5 (W.D. Wis. Oct. 15, 2015)).

The court also notes that recently the First Circuit Court of Appeals in United States v. Giggey, — F.3d ----, 2017 WL 3473643, *4 (1st Cir. Aug. 14, 2017), considered whether "the sentencing court erred in determining that methcathinone was the controlled substance referenced in the sentencing guidelines that corresponds most closely to alpha-PVP." The First Circuit found that "the district court did not clearly err in finding that methcathinone is the drug referenced in the sentencing guidelines that is most closely related to alpha-PVP." Id. at *5.

It is clear that USSG §2D1.1, Application Note 6 instructs the court to find the most closely related controlled substance from among those referenced in the guideline. See Moreno, 2015 WL 6071680 at *2. "[T]he Court is not required to find that a proposed comparator is the single most

15

closely related controlled substance", rather "the objective is to determine which controlled substance, on the whole, under [the three criteria, namely, chemical structure, pharmacological effect, and potency], is the 'most closely related' for purposes of sentencing." Brewer, 2016 WL 3580614, at *12.[3] This court finds the above cases cited by the government persuasive and, thus, finds that methcathinone is the most appropriate analogue referenced in the guideline to alpha-pvp. It is noteworthy that Duong does not cite to any cases that found methcathinone was not the most closely related controlled substance to alpha-pvp.

As such, the court finds that methcathinone was properly used as a comparator to alpha-pvp for Duong's sentencing. Thus, "[t]he Court concludes that in fixing the Guideline provision applicable to [Duong's] criminal conduct, methcathinone is the 'most closely related' controlled substance to Alpha-PVP." Brewer, 2016 WL 3580614, at *15. Duong did not receive a higher base offense level under the guidelines than she should have received, and any objection by Duong's counsel to the use of methcathinone as a comparator to alpha-pvp would have been meritless. Therefore, Duong's counsel could not have been ineffective based on this claim in her §2255 motion. *See* U.S. v. Sanders, 165 F.3d 248, 253 (3d Cir. 1999) ("There can

---

[3]In Brewer, 2016 WL 3580614, at *12-14, the court conducted an extensive analysis of the three above stated criteria and concluded that methcathinone was the most closely related controlled substance to alpha-pvp under USSG §2D1.1. This court concurs with and adopts the analysis conducted by the *Brewer* Court.

be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument.").

### 3. Gun Enhancement

The PSR applied an enhancement to Duong for possession of a firearm in connection with the drug conspiracy and the court utilized this enhancement at sentencing. (*See* PSR ¶26). In her §2255 motion, Duong now claims that her counsel was ineffective for failing to object to the gun enhancement at her sentencing since she did not use the gun to facilitate any crime and since all of her drug transactions were done online. She states that she "never met with any customers" and that "[t]he gun was for [her] personal protection and was kept in a safe inside a closet." She also states that she never used the gun. (Doc. 171 at 6).

It is settled that "[w]here defense counsel fails to object to an improper enhancement under the Sentencing Guidelines, counsel has rendered ineffective assistance." U.S. v. Otero, 502 F.3d 331, 336 (3d Cir. 2007)(citation omitted). In her traverse, (Doc. 174 at 7), Duong reiterates that her counsel should have objected to the gun enhancement since all of her drug transactions were done online on her computer and that "any weapons on [her] premises had no connection to the offense." (Doc. 174 at 7). Thus, she contends that there was insufficient evidence to support the finding that she possessed any firearm in furtherance of drug crimes.

Section 2D1.1(b)(1) of the USSG provides for a two-level enhancement

17

"[i]f a dangerous weapon (including a firearm) was possessed" during the defendant's offense. In U.S. v. Napolitan, 762 F.3d 297, 309 (3d Cir. 2014), the Third Circuit adopted a burden-shifting approach to determine when the court should apply the gun enhancement under §2D1.1(b)(1) and stated:

> The government bears the burden of proving by a preponderance of the evidence that a sentencing enhancement applies. *See* United States v. Grier, 475 F.3d 556, 568 (3d Cir. 2007) (en banc). With respect to §2D1.1(b)(1), the government must show only that the defendant "possessed" a dangerous weapon, and it can do so by establishing "that a temporal and spatial relation existed between the weapon, the drug trafficking activity, and the defendant." United States v. Ruiz, 621 F.3d 390, 396 (5th Cir. 2010) (quoting United States v. Cisneros–Gutierrez, 517 F.3d 751, 764–65 (5th Cir. 2008)). Once the government makes out a prima facie showing that the defendant drug-dealer possessed a weapon, the burden of production shifts to the defendant to demonstrate that the connection between the weapon and the drug offense was "clearly improbable." *See* United States v. Greeno, 679 F.3d 510, 514 (6th Cir. 2012), *cert. denied*, —— U.S. ——, 133 S.Ct. 375, 184 L.Ed.2d 222 (2012) (explaining that once the government has met its burden, the burden shifts to the defendant to present evidence showing the drug-weapon connection was "clearly improbable"). We emphasize that the ultimate burden of proving the applicability of the enhancement remains at all times with the government. But once the government has made a prima facie showing that the defendant possessed the weapon, the enhancement should be applied unless the defendant can demonstrate that the drug-weapon connection was clearly improbable.

*See also* U.S. v. Mendez, 78 Fed.Appx. 806, 807 (3d Cir. 2003) ("Under §2D1.1, app. note 3, if a weapon is present, the gun enhancement should be applied 'unless it is clearly improbable that the weapon was connected to the offense.'").

"Note (3) of the Commentary to §2D1.1(b)(1) explains that '[t]he enhancement for weapon possession ... reflects the increased danger of violence when drug traffickers possess weapons.'" U.S. v. Walker, 529 Fed.appx. 256, 268 (3d Cir. 2013). However, the gun enhancement should not be applied by the court if it finds "improbable a connection between the weapon and [defendant's] drug distribution." Mendez, 78 Fed.Appx. at 807. "[D]efendants have rarely been able to overcome the 'clearly improbable' hurdle." United States v. Drozdowski, 313 F.3d 819, 822 (3d Cir. 2002).

The government, (Doc. 173 at 16), contends that the gun enhancement was supported by the record because:

> The defendant used her residence in Texas to order, store, and prepare for shipment of alpha-pvp. By her own acknowledgment in her [§2255 motion, Doc. 171 at 4], she received individual shipments of alpha-pvp in quantities as large as six kilograms. When agents executed a search warrant at her residence, they seized 843 grams of alpha-pvp, digital scales, invoices related to sales of alpha-pvp, cash and drug proceeds, and two firearms [a Glock .26 caliber and a Glock .22 caliber]. There is no dispute that the defendant used her residence to conduct her illegal drug trafficking business.

The government states that "[t]he fact that the defendant claims that the guns were kept in a safe in a closet does not mean that it is clearly improbable that the weapons were being used in connection with the drug offense." It also points out that "[t]he Third Circuit Court rejected that 'not readily accessible' argument in Drozdowski, 313 F.3d 819, 823 (3d Cir. 2002)." (Doc. 173 at 17).

In her traverse, Duong emphasizes that all of her drug transactions took place online and that none of the transactions took place in her home. Thus, she maintains that it is not improbable that her weapons in her house had no connection to her drug offense. (Doc. 174 at 7). She does not dispute that she used her house to order, store and prepare for her shipment alpha-pvp, and that the weapons were in her house.

The court finds that the government met its burden. There was ample evidence to show that Duong possessed guns and had access to the guns in her house and, there was a sufficient nexus of the guns to her drug offense. Even though Duong points out that the guns were in a safe inside a closet in her house and may have been inaccessible to other people in her house, the fact remains that she knew where the guns were and she could easily open the safe to retrieve them. *See* Drozdowski, 313 F.3d at 823-24. Duong failed to produce sufficient evidence to show that the connection between her guns and her drug offense was clearly improbable. Thus, the court finds that the gun enhancement was properly applied to Duong, i.e., "that [Duong] possessed the firearms in part to protect the drugs, the drug proceeds, and the residence where the drug business was conducted." (Doc. 173 at 17-18). Indeed, in her §2255 motion, Duong admits that the guns were for protection and that they were accessible in her house if she needed them. (Doc. 171 at 6). *See* U.S. v. Napolitan, 762 F.3d 297 (3d Cir. 2014).

Therefore, Duong's counsel was not ineffective for failing to object to the

gun enhancement she received at sentencing since there was no basis for her counsel to raise such an objection. *See* Real v. Shannon, 600 F.3d at 310. As such, the court finds no merit to Duong's third claim in her §2255 motion.

## IV.   EVIDENTIARY HEARING

Although Duong does not specifically request an evidentiary hearing, the court will address the issue because the government raises it in its brief and suggests that no hearing should be held in this case. (Doc. 173 at 6). "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States Attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. §2255(b). *See* United States v. Day, 969 F.2d 39, 41-42 (3d Cir. 1992)(The court is required to conduct an evidentiary hearing to ascertain the facts "unless the motion and files and records of the case show conclusively that the movant is not entitled to relief.")(citation omitted). However, the court need not accept the petitioner's allegations as true if they "are unsupported by specifics [or] wholly incredible in the face of the record.") Patton v. United States, 2010 WL 3191887, *1 (W.D. Pa. 2010) (citing United States v. Estrada, 849 F.2d 1304,1307 (10th Cir. 1988)). A review of the motion, the traverse and the government's brief, as well as the law and the

claims make it clear that Duong's allegations are wholly unsupported by the record. The court finds that Duong is not entitled to an evidentiary hearing because the record conclusively establishes that she is not entitled to the relief sought in her §2255 motion. Therefore, the court, in its discretion, finds no reason to hold an evidentiary hearing.

## V.    CERTIFICATE OF APPEALABILITY

A petitioner may not file an appeal from a final order unless a district or circuit judge issues a certificate of appealability ("COA") pursuant to 28 U.S.C. §2253(c). A COA shall not issue unless "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). The petitioner must show that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003); *see also* Slack v. McDaniel, 529 U.S. 473, 484 (2000). Here, a COA will not issue because Duong has shown neither the denial of a constitutional right nor that jurists of reason would disagree with this court's resolution of her claims.

## VI.    CONCLUSION

Based on the foregoing, the court finds Duong fails to show her trial and appellate counsel were ineffective or deficient in any way. Therefore, the court

**DENIES** Duong's §2255 Motion. (Doc. 171). An appropriate order shall follow.


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**


**DATE: September 28, 2017**

O:\Mannion\shared\MEMORANDA - DJ\CRIMINAL MEMORANDA\2014 CRIMINAL MEMORANDA\14-73-01.wpd